UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x
CHRISTOPHER ROBBS,

         Petitioner,

   -against-

SUPERINTENDENT GREEN HAVEN
CORRECTIONAL FACILITY,

         Respondent.
---------------------------------------------------------------- x

MEMORANDUM & ORDER

14-cv-7364 (ENV)

VITALIANO, D.J.

Petitioner Christopher Robbs, convicted of murder, has filed a *pro se* petition for a writ of *habeas corpus*, pursuant to 28 U.S.C. § 2254. Dkt. 1. For the reasons set forth below, the writ is denied and the petition is dismissed.

## Background

On January 17, 2001, petitioner, as charged, shot at Shurland Williams nine times on a street corner in Brooklyn, striking Williams six times and fatally wounding him. Petitioner was charged with two counts of murder, pursuant to New York Penal Law § 125.25(1) (intentional murder) and § 125.25(2) (depraved indifference murder), and one count of criminal possession of a weapon in the second degree, pursuant to New York Penal Law § 265.03(1). *See People v. Robbs*, Kings County Indictment No. 8798/2002.[1] R. at 140. Robbs was convicted of depraved indifference murder at a jury trial and sentenced to a prison term of 25 years to life.

Robbs appealed his conviction on 11 grounds, but all were rejected by the Appellate

---

[1] Petitioner's brief in the Appellate Division asserted that he was charged with criminal possession of a weapon in the second and third degree. R. at 110. The record and briefs are otherwise silent as to what became of the weapons charge.

1

Division, Second Department. *People v. Robbs ("Robbs II")*, 98 A.D.3d 691, 950 N.Y.S.2d 276 (2d Dep't 2012). Then, representing himself, Robbs successfully sought an extension of time from the New York Court of Appeals to file an application for leave to appeal. A victory short-lived, the New York high court denied leave once the application was filed. *People v. Robbs ("Robbs III")*, 22 N.Y.3d 1158, 7 N.E.3d 1130, 984 N.Y.S.2d 642 (Table) (2014). This petition followed.

Facts

Setting aside the question of whether petitioner had a culpable state of mind, the events giving rise to his conviction are, generally, not in dispute. The pertinent facts are taken from the state court record and reviewed in the light most favorable to the jury's verdict. *See Gutierrez v. Smith*, 702 F.3d 103, 113 (2d Cir. 2012) ("The relevant question under *Jackson* is whether, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'") (emphasis original) (quoting *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)).

Robbs and Williams were known to each other weeks prior to the murder. Robbs was present when Williams and others were firing a gun. After that incident, there was acrimony between them. R. at 364.[2] Shortly after 3:00 P.M. on the day of the shooting, January 17, 2001, Williams and two others, Jamaal Adams and Victor Davis, drove together toward a store on the corner of Franklin Avenue and Lincoln Place. R. at 364. Robbs was already outside the store when Williams, Adams and Davis arrived. R. at 364. A verbal dispute between Robbs and Williams ensued. R. at 365-66. Though there is disagreement as to the subject of the dispute,

---

[2] All record citations ("R.") refer to PageID numbers.

there is no disagreement that the shooting put an end to it. *Id.* Six bullets fired by Robbs found their mark, killing Williams there and then. *Id.*

Robbs fled New York the following day. R. at 365. Almost two years later, he was arrested in North Carolina. R. at 366. He gave multiple statements to the police after his arrest, R. at 366-67, and was charged soon thereafter.

Robbs's defense at trial largely relied on a theory of self-defense. He argued that he was justified in shooting Williams because, he said, Williams confronted him in the street and reached for a gun in his car, prompting Robbs to fire at him. R. at 523-62.

Then there was the prosecution's version, which was supported by the eye-witness testimony of Jamaal Adams and Victor Davis, who told similar but not identical tales. R. at 119-21; R. at 126-27. As trial realities commanded, Robbs took the stand in his own defense to give his account. R. at 1352-1486. The jury, as noted earlier, convicted Robbs of depraved indifference murder, R. at 1769, a conviction that was sustained on direct appeal.

Rebuffed by the state courts, Robbs applied for federal *habeas* relief on December 15, 2014. In his petition, Robbs raises 11 categories of claims. They are the same as those he advanced on direct appeal to the Appellate Division. R. at 1-39; R. at 104-33.

Standard of Review

Under the Anti-terrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), a writ of *habeas corpus* shall not issue with respect to any claim that was adjudicated on the merits in state court unless the state court's decision (1) "was contrary to," or involved an unreasonable application of, "clearly established federal law," as determined by the United States Supreme Court, or (2) "was based on an unreasonable determination of the facts" in light of the evidence presented. 28 U.S.C. § 2254(d); *see also Gutierrez v. McGinnis*,

3

389 F.3d 300, 304 (2d Cir. 2004) (describing this standard as "AEDPA deference"). AEDPA's deferential review applies whenever a state court disposes of a state prisoner's federal claim on the merits, regardless of whether it gives reasons for its determination or refers to federal law in its decision. *Harrington v. Richter*, 562 U.S. 86, 100, 131 S. Ct. 770, 785, 178 L. Ed. 2d 624 (2011); *see also Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).

"Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102 (internal quotation marks omitted). In other words, review under AEDPA "demands that state-court decisions be given the benefit of the doubt." *Hardy v. Cross*, 565 U.S. 65, 66, 132 S. Ct. 490, 491, 181 L. Ed. 2d 468 (2011) (internal quotation marks omitted). When AEDPA deference applies, "[a] state court's findings of fact are 'presumed to be correct' unless rebutted 'by clear and convincing evidence.'" *Drake v. Portuondo*, 553 F.3d 230, 239 (2d Cir. 2009) (quoting 28 U.S.C. § 2254(e)(1)).

*Habeas corpus* jurisprudence, given these ground rules, is sharply confined. For the purposes of federal *habeas* review, "clearly established federal law" refers to the holdings, as opposed to *dicta*, of Supreme Court decisions in effect at the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412, 120 S. Ct. 1495, 1498, 146 L. Ed. 2d 389 (2000). A state court decision is "contrary to clearly established federal law," within the meaning of § 2254(d), if it contradicts relevant Supreme Court precedent or arrives at a different conclusion based on "materially indistinguishable" facts. *Id.* at 405-06. A state court decision is classified as one resting on an "unreasonable application" of federal law if it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of" the case. *Id.* at 413. Yet, in construing and applying federal law,

4

even erroneous state court decisions, if deemed reasonable, will survive *habeas* review. *Id.* at 411.

The state court decision, however, need not be "so far off the mark as to suggest judicial incompetence" before *habeas* relief may be granted. *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000). Still, a federal court may reverse a state court ruling only where it is "so lacking in justification that there [is no] possibility for fairminded disagreement." *Vega v. Walsh*, 669 F.3d 123 (2d Cir. 2012). "If this standard is difficult [for a petitioner] to meet – and it is – that is because it was meant to be." *Burt v. Titlow*, 571 U.S. 12, 20, 134 S. Ct. 10, 16, 187 L. Ed. 2d 348 (2013) (internal quotation marks omitted). Federal courts should not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunctio[n]' for which federal habeas review is the remedy." *Id.*

## Discussion

### I. Jury Consideration of Multiple Murder Counts

Robbs argues that the trial court committed several constitutional errors in submitting both the intentional murder count, pursuant to New York Penal Law § 125.25(1), and depraved indifference murder count, pursuant to Penal Law § 125.25(2), to the jury. R. at 21-28. His attacks on the submission and jury instructions are four-fold: (1) that the depraved indifference murder statute is unconstitutionally vague; (2) that there was insufficient evidence to convict him of depraved indifference murder; (3) that the trial court erred in submitting both murder charges to the jury; and (4) that the evidence presented to the grand jury supported only an intentional murder charge.

The Second Department dispatched Robbs's vagueness argument quickly, citing *People v. Johnson*, 87 N.Y.2d 357, 662 N.E.2d 1066, 639 N.Y.S.2d 776 (1996). *See Robbs II*, 98

5

A.D.3d at 692. Shooting down this ground as a highway to relief, in *Johnson*, the Court of Appeals rejected the premise that the depraved indifference murder statute is unconstitutionally vague. *Id.* at 361 ("[C]onduct with depraved indifference to human life is well understood."). This conclusion received federal endorsement in *Mannix v. Phillips*, 619 F.3d 187, 201 (2d Cir. 2010).

Robbs's second argument rests on his contention that the People had not introduced sufficient evidence at trial to merit a depraved indifference murder instruction in the first place. In affirming the decision of the trial court, the Appellate Division concluded that petitioner's case "presents one of those rare instances where, depending on which evidence the jury credited, the defendant could have been found to have committed either intentional murder or depraved indifference reckless murder." *Robbs II*, 98 A.D.3d at 692 (citing *People v. Timmons*, 78 A.D.3d 1241, 1242-43, 910 N.Y.S.2d 290, 2010 N.Y. Slip Op. 07835 (3d Dep't 2010); *People v. Carter*, 40 A.D.3d 1310, 1311-12, 838 N.Y.S.2d 192, 2007 N.Y. Slip Op. 04372 (3d Dep't 2007)).

Robbs presses, in his opposition submission, that the circumstances of his shootout with Williams are distinguishable from the seminal cases, *Timmons* and *Carter*, because he "consciously shot towards a parked car where the victim and witnesses were standing" rather than "towards a crowd." R. at 26. Dispositively, however, shooting directly toward a sizable crowd is not a *sine qua non* in making out a case of depraved indifference murder. *Timmons* held that a conviction for depraved indifference murder could stand where the defendant "was aware of the presence of innocent people . . . when he fired a shot on a *crowded street*." 78 A.D.3d 1241, 1243 (emphasis added). To similar effect, *Carter* held that "wildly shooting toward *several people*" was sufficient. 40 A.D.3d at 1312 (emphasis added). Indeed, the concession by Robbs that he "consciously shot" toward "witnesses" other than Williams is proof

6

enough that the Appellate Division, and, by extension, the trial court, reasonably applied constitutionally compliant state law in finding that sufficient evidence had been adduced to support a jury charge on depraved indifference murder.

Furthermore, petitioner's reliance on *People v. Payne* does not pull his claim back from the abyss. In *Payne*, the Court of Appeals held that a "one-on-one shooting or knifing (or similar killing) can almost never qualify as depraved indifference murder," 3 N.Y.3d 266, 272, 819 N.E.2d 634, 786 N.Y.S.2d 116 (2004), going on to distinguish such conduct from "homicides in which a defendant lacking the intent to kill (but oblivious to the consequences and with depraved indifference to human life) shoots into a crowd or otherwise endangers innocent bystanders," *id.* at 271; that is, non-aggressors present near the deceased when he is killed. Unwittingly, perhaps, Robbs verifies his testimony at trial that he did not intend to kill Williams but, instead, fired his gun while "trying to scare the victim and witness (sic) off." R. at 26. In other words, he fired in the direction of a group of innocent bystanders.

The jury apparently believed him, acquitting him of intentional murder and convicting him of depraved indifference murder. R. at 1447. And, surely, discharging a firearm nine times in the close presence of a gathering of non-aggressors, for the purpose of scaring them off, and hitting one in the group six times and killing him, is precisely what that provision of the Penal Law covers. Clearly, there was sufficient evidence upon which the jury could have found that the shooting "evinc[ed] a depraved indifference to human life." Penal Law § 125.25(2). The evidence supports the jury instruction given by the trial judge and the conviction. There is no basis in federal *habeas* jurisprudence to upset that determination by the state court.

The balance of Robbs's arguments on this claim are meritless. He attacks the trial court's submission of a "twin count indictment" to the jury, meaning that it allowed the jury to consider

7

simultaneously both intentional murder and depraved indifference murder. Although under New York law it is true that twin count indictments of this sort "should be rare" and twin count submissions to a jury "even rarer," *People v. Suarez*, 6 N.Y.3d 202, 215, 844 N.E.2d 721, 811 N.Y.S.2d 267 (2005), that, exactly, is what the Second Department found here – the "even rarer" exception. *See Robbs II*, 98 A.D.3d at 692 ("This matter presents one of those rare instances where, depending on which evidence the jury credited, the defendant could have been found to have committed either intentional murder or depraved indifference reckless murder."). Fatally, Robbs does not identify any AEDPA-qualifying precedent that is contrary to the state court determinations he challenges. In short, this claim presents no error, preserved or unpreserved, in the determination of his federal constitutional rights.

Robbs's other argument challenges as insufficient the evidence presented to the grand jury to support the indictment, notwithstanding a finding that there was sufficient evidence at trial to support the conviction. Petitioner's sufficiency of the grand jury evidence claim not only fails to advance a federal basis for relief, but, even if it did, it would have been defaulted by Robbs since any question regarding the sufficiency of the grand jury evidence is "not reviewable" once, as is the case here, an individual is "convicted upon legally sufficient evidence." *Robbs II*, 98 A.D.3d at 692 (citing *People v. Parker*, 74 A.D.3d 1365, 1366, 903 N.Y.S.2d 264 (Mem), 2010 N.Y. Slip Op. 05793 (2d Dep't 2010)); *see also* N.Y. Crim. Proc. Law § 210.30(6). The record reveals no attempt by petitioner to seek redress before trial.

II. <u>Procedurally Defaulted or Otherwise Unreviewable Claims</u>

Robbs is not entitled to relief on any of his remaining claims because they either are procedurally barred or raise no issue reviewable on *habeas*.

A.  Adequacy of the Justification Instruction

Petitioner argues that the trial court erred in its charge to the jury on self-defense because (1) it did not "fully instruct the jury" that the burden on this affirmative defense rested with the prosecution, and (2) petitioner's "duty to retreat" did not arise until just moments before "it became obvious to defendant that deadly physically (*sic*) force was going to be used against him." R. at 28-29. The Appellate Division ruled that Robbs "failed to preserve for appellate review" whether the trial court "failed to instruct the jury" properly. *Robbs II*, 98 A.D.3d at 692; *see also* N.Y. Crim. Proc. Law § 470.05(2) (contemporaneous objection rule). Waiving this claim in state court is an independent ground to preclude federal review on the merits in a *habeas* proceeding. Indeed, "it is a well-established principle of federalism that a state decision resting on an adequate foundation of state substantive law is immune from review in the federal courts." *Wainwright v. Sykes*, 433 U.S. 72, 81, 97 S. Ct. 2497, 2503, 53 L. Ed. 2d 594 (1977). The failure to preserve an argument for appellate review, therefore, is an adequate and independent state ground to bar *habeas* review of the Appellate Division's affirmance of petitioner's conviction.

In any event, the Appellate Division also went on to hold that Robbs was not prejudiced since the trial court properly instructed the jury on the People's burden. *Robbs II*, 98 A.D.3d at 692; *see also* R. at 1729 ("Now, the People have the burden, beyond a reasonable doubt, to establish the defendant was the initial aggressor."). Likewise, the Appellate Division held that the trial court's instruction on the duty to retreat "conveyed the correct legal principles" codified in New York Penal Law § 35.15. *Robbs II*, 98 A.D.3d at 692. Moreover, assuming Robbs had not procedurally defaulted this claim, courts reviewing *habeas* petitions are constrained in their review of allegedly erroneous jury instructions. Petitioner must establish "not merely that the instruction [wa]s undesirable, erroneous, or even 'universally condemned,' but that it violated

some right which was guaranteed to the defendant by the Fourteenth Amendment." *Cupp v. Naughten*, 414 U.S. 141, 146, 94 S. Ct. 396, 400, 38 L. Ed. 2d 368 (1973). Petitioner has failed to do so, and, as the Appellate Division noted in its alternate holding, he did not even identify a substantive error in the instruction.

  B. Prosecutor's Summation on the Duty to Retreat

Consistent with his challenge to the trial court's jury instructions, Robbs likewise argues that he is entitled to *habeas* relief because, in summation, the prosecutor claimed (1) that Williams "was not armed" at the time of the shooting when, as petitioner contends, Williams was armed and (2) that petitioner had a duty to retreat when Williams arrived at the scene or shortly thereafter. R. at 29. It got no traction on direct appeal. The Second Department held that the prosecutor's remark on Williams not being armed was a "fair comment on the evidence," and that a challenge to the comments on Robbs's duty to retreat was not preserved for review. *Robbs*, 98 A.D.3d at 692. To the extent that the Appellate Division made substantive findings rejecting these claims, those findings would be entitled to AEDPA deference, which would not be overcome simply by virtue of Robbs's difference of opinion, which, in essence, is all that he offers. The writ cannot issue on these bases.

  C. Preclusion of Jamaal Adams's Testimony

In his litany of grievances, petitioner contends that the trial court violated his federal constitutional rights by (1) permitting Jamaal Adams to invoke his Fifth Amendment privilege against self-incrimination when Robbs recalled him as a witness and (2) "ritualistically applying hearsay rules" to preclude the admission of Adams's statements to an investigator asserting that, at the time of the shooting, Adams and Williams were both armed and Williams instigated the encounter with Robbs. R. at 1790. Neither of these contentions is persuasive.

10

First, it is axiomatic that individuals – even non-party witnesses – are protected by the Fifth Amendment's safeguards against self-incrimination. U.S. Const. amend. V. The prosecution "cannot be penalized" when the testimony of a witness is "unavailable because the witness takes refuge in his constitutional privilege against self-incrimination." *People v. Sapia*, 41 N.Y.2d 160, 165, 359 N.E.2d 688, 391 N.Y.S.2d 93 (1976); *accord Grochulski v. Henderson*, 637 F.2d 50, 52 (2d Cir. 1980) ("As a matter of New York law it is clear that the defense cannot require a prosecutor to grant immunity to a witness."). As for petitioner's exceptions to the trial court's evidentiary rulings precluding certain evidence as violative of the hearsay rules, those exceptions are not appropriate for *habeas* review. *See Jenkins v. Bara*, 663 F. Supp. 891, 899 (E.D.N.Y. 1987) (evidentiary rulings are "not redressable in a federal habeas corpus proceeding absent a showing that the particular errors were of constitutional magnitude"). Because petitioner has not advanced for consideration any evidentiary rulings violative of New York's evidence practices, let alone one of constitutional magnitude as is necessary to warrant *habeas* relief, the writ may not issue on this ground either.

D. Ex Parte Communications

Robbs complains that the trial court improperly "held ex-parte discussions with the prosecution during the trial" relating to "substantive issues." R. at 31. The Appellate Division declined to address this argument in its decision,[3] but it is clear from the trial transcript that the conversations petitioner targets involved "scheduling and nothing of any real substance." R. at 445. Consistent with common practice, New York law expressly carves out "communications

---

[3] This argument, like several others, was not specifically analyzed by the Appellate Division but simply denied as being "without merit." *Robbs II*, 98 A.D.3d at 692. Such a ruling implies that the claim was not procedurally defaulted and was decided substantively.

11

that are made for scheduling or administrative purposes and that do not affect a substantial right of any party" from the general prohibition against ex parte communications. 22 N.Y.C.R.R. Part 100.3(B)(6)(a). Moreover, given their nature, these ex parte communications are simply a "non-event." *See Marji v. Rock*, No. 09-CV-2420 CS PED, 2011 WL 4888829, at *2 (S.D.N.Y. Oct. 13, 2011). In no event do they afford a basis for federal *habeas* relief.

    E.    *Wade* Hearing

Petitioner's next claim is a non-starter. It contends that the trial court erred in refusing to reopen the *Wade* hearing. "The purpose of a *Wade* hearing is to determine [before] the trial whether pretrial identification procedures have been so improperly suggestive as to taint an in-court identification." *Twitty v. Smith*, 614 F.2d 325, 333 (2d Cir. 1979). But, Robbs's objection is unaccompanied by even a hint about how or why taint attached as a result of any pre-trial identification procedures. Indeed, identification does not ever appear to have been in dispute in this case. From Robbs's opening statement through summation to the Appellate Division's affirmance to this petition, Robbs has conceded he shot Williams but that he did so in self-defense. *See, e.g.*, R. at 21-29. The Appellate Division's conclusion that this claim was meritless is entitled to AEDPA deference and there is no showing that the ruling is clearly erroneous. It cannot support *habeas* relief.

    F.    Prosecution's Use of "False Evidence"

Based on two separate incidents at trial, Robbs charges that the People knowingly used "false evidence" to convict him. The first arises out of his claim that the prosecution did not inform him that police investigators had "changed" the crime scene because it did not match what was visible in crime scene photographs that had been produced to him, R. at 433-34, or what was evident from a detective's notebook. *See* R. at 433-34. Prejudice attached, he claims,

because, without disclosure to him, the discrepancy in the photographs and notebook misled him as to the position of Williams's car when the victim arrived at the scene and compromised the theory of defense he had crafted (*i.e.* self-defense). Clearly, though, the prosecution fulfilled its obligations under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), by providing Robbs with the required material; Robbs cites no case law that the prosecution was also required to explain it, nor does he make any showing that anything the prosecution may have said about the photographs or notebook, which *Brady* required it to produce, was false.

Although not properly in the "false evidence" pigeonhole, the second argument Robbs grieves is the trial court's refusal to permit his counsel to impeach witness Victor Davis with an omission in a prior statement he had made, while permitting the People to impeach another witness with earlier statements. As noted above, such evidentiary rulings alone, without more, do not raise issues cognizable on federal *habeas* relief. *See Daniel v. Conway*, 498 F. Supp. 2d 673, 682 (S.D.N.Y. 2007) ("An erroneous evidentiary ruling may qualify for habeas relief only if such error violated petitioner's due process rights to such an extent as to deprive him of a fundamentally fair trial."). As with the first incident, on AEDPA federal *habeas* review, the Court is without authority to disturb, on these facts, the Second Department's finding that the claim is meritless.

G.  Victor Davis's Criminal Records

In what might be a shade of a *Brady* claim, Robbs alleges that the prosecution "promised" to have its investigator obtain Victor Davis's criminal records from Virginia and provide them to his counsel. R. at 34. The investigator failed to do so, although the trial court still allowed Davis to testify, which, Robbs argues, deprived his counsel of the opportunity to fully cross-examine Davis. R. at 34. Petitioner, however, does not offer, nor is the Court aware

13

of any, Supreme Court precedent requiring the prosecution to provide information not within its possession to assist a defendant in preparing his case or, more specifically, to enhance the defense's cross-examination of a witness. Based merely on what petitioner contends on this claim – that Victor Davis had a criminal record, which would have permitted his impeachment to the extent permitted by New York's rules of evidence – the Appellate Division found this claim meritless. It also raises no issue that is cognizable on federal *habeas* review, and, if it did, the Appellate Division's resolution of it would be entitled to AEDPA deference.

H. Trial Judge

Petitioner argues that he was denied a fair trial by virtue of the "personal attacks, demeaning comments, and short-tempered reactions by the Court on and to defense counsel." R. at 35. Specifically, in support of this claim, petitioner relies on instances in which the trial judge:

- admonished defense counsel that "[a]ny second year law student who had evidence would know" the prerequisites to using impeachment evidence. R. at 937;

- lamented defense counsel's purported aggressiveness with witnesses, stating, "Unfortunately, that is [his] style. It looks as if nothing is ever going to change here. It must have worked for him at some time, and he continues to do it. What do you want me to do, hold him in contempt? I really can't do that. . . . Because, at this point, nothing seems to sway [defense counsel] from his appointed course of doing what he wants to do." R. at 931;

- rebuffed defense counsel when he asked that the judge not "come that close to me" during sidebars, responding, "That is nonsense. You have not heard anything we have said. Do not try to do old legal aid – let's proceed." R. at 507; and

- responded to defense counsel's persistence in seeking an evidentiary ruling by telling him

14

to "shut up." R. at 427.

But, notwithstanding any shock value they may have had, none deprived petitioner of a fair trial. All but the last exchange occurred outside the presence of the jury. And, with respect to the trial judge's direction to "shut up" when counsel refused to abide by the trial judge's direction to cease argument, to ensure that jurors were not holding his admonition of defense counsel against Robbs, the trial judge exhaustively questioned them and issued a proper curative instruction that they were to "disregard" colloquy and not make it a "trial of personality." R. at 1144-73. It was the appropriate antidote. Courts "presume" that jurors adhere to curative instructions. *United States v. Stewart*, 590 F.3d 93, 123–24 (2d Cir. 2009) (quoting *Richardson v. Marsh*, 481 U.S. 200, 206, 107 S. Ct. 1702, 95 L. Ed. 2d 176 (1987) (noting that it is an "almost invariable assumption of the law that jurors follow their instructions")). Consequently, this Court concludes, as did the Appellate Division, that Robbs is not entitled to relief on this basis.

I.  Defense Counsel's Health

In the middle of trial, petitioner's counsel experienced health issues that at times caused the proceedings to be adjourned. As with all of petitioner's other arguments reviewed by the Appellate Division on their merits, however, there is no basis to conclude that its rejection of this claim should not receive AEDPA deference.

J.  Other Assignments of Error

Robbs argues that the trial court committed four additional errors that deprived him of a fair trial: (1) denying a continuance, (2) adversely ruling as to the testimony of two potential expert witnesses, (3) permitting the People to reopen their case in chief, and (4) dismissing an impaneled juror for cause. None is cognizable on *habeas* review. Each raises a quintessential

15

state law claim, with no federal issue presented and nothing in the record indicative of a fundamental constitutional defect. AEDPA deference cannot be overcome.

## Conclusion

For the foregoing reasons, a writ of *habeas corpus* is denied and the petition is dismissed.

Since petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. *See* 28 U.S.C. § 2253(c)(2).

The Court certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Memorandum & Order would not be taken in good faith and, therefore, *in forma pauperis* is denied for the purpose of any appeal. *See Coppedge v. United States,* 369 U.S. 438, 444-45, 82 S. Ct. 917, 920-21, 8 L. Ed. 2d 21 (1962).

The Clerk of Court is directed to mail a copy of this Memorandum & Order to petitioner, to enter judgment accordingly and to close this case.

So Ordered.

Dated: Brooklyn, New York
February 24, 2019

s/ Eric N. Vitaliano

ERIC N. VITALIANO
United States District Judge